UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTWAN ALEXANDER,

    Plaintiff,

v.                                                                                          Case No. 14-14612

TREVA L. EATON, et. al.,

    Defendants.
                                     /

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT WITH RESPECT TO FEDERAL CLAIMS AND
DISMISSING STATE LAW CLAIMS**

This is a claimed excessive force case brought against several police officers. A Motion for Summary Judgment has been filed by Defendant Police Officers Treva L. Eaton, Qasem M. Isam, Dean J. Muczynski, and Tom A. Collins. (Dkt. # 12). Plaintiff, through counsel, has filed an "Objection" to the Motion which the court interprets as a Response. The matter is therefore fully briefed. The court finds that a hearing is unnecessary. *See* E.D. LR 7.1(f)(2). For the reasons discussed below, the court will grant Defendants' Motion with respects to the federal claims and dismiss without prejudice Plaintiff's state law claims.

## I. BACKGROUND

This case arises out of two completely unrelated incidents between Plaintiff and law enforcement officers. The first was a traffic incident that occurred on December 15, 2012 as Plaintiff was driving in the city of Detroit. Defendant Officers Isam Qasem and Treva Eaton stopped Plaintiff, allegedly for speeding. (Dkt. # 19, Pg. ID 208.) Plaintiff concedes that at the time, he was driving without either a valid driver's license or

automobile insurance, and recognizes that both are crimes in the state of Michigan. (Dkt. # 19-3, Pg. ID 256.) As a result, Defendants impounded the vehicle. (*Id.* at Pg. ID 257.)

Plaintiff claims that during the traffic stop, Defendant Qasem approached the car, checked Plaintiff's license, and then, without uttering a word, grabbed a bottle of water out of Plaintiff's hand and intentionally poured it out all over Plaintiff's lap. (*Id.* at Pg. ID 257-58.) He claims he was left cold and wet on the side of the road. Defendants dispute these allegations.

The second incident occurred five months later. On April 3, 2013. Plaintiff's girlfriend, Linda King, called 911 to report that Plaintiff had been drinking and was threatening to commit suicide. (Dkt. # 19-8, Pg. ID 367.) Defendant Officers Dean Muczynski and Tom Collins were dispatched and contend that when they arrived on the scene, Plaintiff was "angry and irate" and "flailing out at anybody in his sight." (Dkt. # 19-9, Pg. ID 388.) The Defendant Officers handcuffed Plaintiff and called two other officers to transport him to the hospital. (Dkt. # 19, Pg ID. 215.) Plaintiff disputes this narrative. He claims that when the officers arrived he was asleep and that, once they awoke him, "[t]hey started beating [him] in [his] face and [his] head." (Dkt. # 23, Pg. ID 460.)

The following December, Plaintiff filed the instant action, alleging assault and battery and suing Defendants through the mechanism of 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights. (Dkt. # 1.) After discovery, Defendant officers moved for summary judgment. (Dkt. # 19).

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]hat burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (internal quotation marks omitted).

The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In evaluating a summary judgment motion, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . . credibility judgments and weighing of the evidence are prohibited." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks and citations omitted).

## III. DISCUSSION

Plaintiff's Amended Complaint contains three counts against Defendants Eaton and Qasem in connection with the December 15, 2012 traffic stop: Count 1—a § 1983 claim asserting a violation of Plaintiff's right to substantive due process; Count 2—a

second § 1983 claim alleging excessive force in violation of the Fourth Amendment; and Count 3—assault and battery under state tort law. (Dkt. # 17, Pg. ID 175-77.) The Complaint also brings three additional § 1983 counts against Defendants Muczynski and Collins alleging the following constitutional violations arising out of the December 3, 2015 handcuffing: Count 4—a violation of Plaintiff's substantive due process rights; Count 5—unreasonable seizure and force; and Count 6—deprivation of liberty. (*Id.* at Pg. ID 177-79.) Count 7 is a second state law assault and battery claim. (*Id.* at Pg. ID 180.)

Defendants claim they are entitled to summary judgment on all counts, both because there is no genuine issue of material fact and because they are entitled to qualified immunity. The court agrees.

### A. December 15, 2012 Incident

### 1. Substantive Due Process Claim

Plaintiff argues that Defendants Eaton and Qasem violated his substantive due process rights when they "took the bottle of water that the plaintiff was drinking and poured the water in plaintiff's lap as he sat behind the wheel of the vehicle." (Dkt. # 17, Pg. ID 176.) The court is unpersuaded. "[T]he substantive component of the due process clause insulates citizens against the arbitrary exercise of governmental power." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (emphasis added). As such "only the most egregious official conduct"—that which "shocks the conscience"—can be said to be arbitrary in the constitutional sense." *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998).

Nevertheless, courts have made clear that "the shocks the conscience standard is no calibrated yard stick" but rather "depends upon the facts and circumstances of the individual case." *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (quoting *Lewis,* 523 U.S. at 847.) Conduct "that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.* After all, "[a] citizen does not suffer a constitutional deprivation every time he is subject to the petty harassment of a state agent." *Parate v. Isibor,* 868 F.2d 821, 833 (6th Cir. 1989) (quoting *Vasquez v. City of Hamtramck,* 757 F.2d 771, 773 (6th Cir. 1985)).

As an initial matter, Plaintiff has not even alleged that "Officer Eaton played any role in pouring water on his lap." (Dkt. # 19, Pg. ID 218.) The Complaint makes clear that it was the "male officer"—Defendant Qasem—who "took the bottle from plaintiff and poured the water in his lap as he sat behind the wheel of the vehicle." (Dkt. # 17, Pg. ID 171.) The footage taken from the police car's dash cam confirms that Defendant Eaton had no interaction with Plaintiff while he was still in the vehicle. (Dkt. # 21.)

Defendants attempt to argue that Plaintiff's testimony that Defendant Qasem poured water on him was "in direct contradiction to the video evidence" as well. (Dkt. # 19, Pg. ID 210.) The court disagrees. As Plaintiff points out, the dash cam video offered into evidence is of "very poor quality." (Dkt. # 23, Pg. ID 454.) While it clearly shows Defendant Qasem approaching the vehicle, opening the driver's side door, and repeatedly reaching inside the automobile, the video does not capture exactly what occurred inside the vehicle. (Dkt. # 21.). Nor is it clear whether Plaintiff's pants were

5

wet when he exited the car. (*Id.*) Plaintiff's testimony that Qasem "took the water and poured it on me" therefore cannot be discounted outright. (Dkt. # 23-1, Pg. ID 473.) Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant Qasem acted as Plaintiff claims he did.

However, even if Defendant Qasem *did* intentionally pour water on Plaintiff's lap, Defendants are still entitled to summary judgment because these actions do not rise to the level of conscience-shocking conduct. As the Sixth Circuit has noted, even "reprehensible" conduct by state actors does not automatically translate into a violation of "substantive due process rights." *EJS Props., LLC v. City of Toledo,* 698 F.3d 845, 862 (6th Cir. 2012). A citizen's constitutional rights are not impinged every time a state agent beleagers him. *Parate,* 868 F.2d at 833.

For example, in *Vasquez,* a plaintiff sued a Hamtramck police officer under section 1983, claiming that the defendant had obtained plaintiff's license plate number and then "maliciously and without probable cause wrote and filed two tickets for illegal parking," despite the fact that the vehicle had never driven through, let alone parked within the city limits. *Vasquez*, 757 F.2d at 773. While recognizing the deplorable nature of the officer's conduct, the Sixth Circuit found that the officer's behavior had not been "egregious" enough to violate the plaintiff's substantive due process rights. *Id.* More recently, the circuit found that a local zoning board did not behave in a manner that shocked the conscience when it solicited a $100,000.00 bribe in exchange for a favorable ruling. *EJS Props., LLC,* 698 F.3d at 862. If such clear abuses of governmental authority—misconduct which could only be performed because the actor was endowed with state power—do not rise to the level of substantive due process

6

violations, Defendant's alleged act of pouring out a bottle of water on Plaintiff's lap does not either. While such an act may be many things, and "reprehensible" may well be among them, the court cannot conclude that this conduct "is so shocking as to shake the foundations of this country." *Id.* Accordingly, the court will grant this aspect of Defendants' Motion.

### 2. Excessive Force Claim

Plaintiff also claims that Defendants Qasem and Eaton violated his "fourth [sic] Amendment right to be secure in his person and home excessive force [sic]." (Dkt. # 17, Pg. ID 177.) In his Response, Plaintiff clarifies that this count "is based on the excessive force used to handcuff the Plaintiff and place him in the back of the police car, in detention without a cause for doing so." (Dkt. # 23, Pg. ID 456.) Nevertheless, Plaintiff has failed to point to *any* evidence to support this cause of action. In fact, Plaintiff's own deposition concerning the traffic stop contradicts it.

    Q. Were you placed in handcuffs?

    A. No.

    Q. Were you placed in the back of the police car?

    A. No.

    . . .

    Q. Did you suffer any physical injuries as a result of the traffic stop?

    A. Being cold.

    Q. Besides being cold did you suffer any other physical injuries as a result of the traffic stop?

    A. No.

> Q. Did you require any treatment as a result of the traffic stop?
>
> A. No.
>
> Q. No treatment of any kind?
>
> A. No.

(Dkt. # 23-1, Pg. ID 474.) In other words, Plaintiff conceded that he was neither handcuffed nor injured by the Defendants. Having failed to discover a genuine issue of material fact, the court will grant this aspect of Defendants' Motion.

### B. April 3, 2013 Incident

### 1. Substantive Due Process Claims

Plaintiff also brings two Fourteenth Amendment claims against Defendants Muczynski and Collins in connections with the April 3, 2013 handcuffing. Count 4 alleges that the Defendants "savagely beat" him and "dragged/pushed/forced the Plaintiff down the flight of stairs while he was still handcuffed," thus violating his "substantive due process" rights. (Dkt. # 17, Pg. ID 177-78.) Similarly, Count 6 asserts that Defendants deprived Plaintif of "liberty without due process of law" when they "dragged" him "to the police vehicle and [took him] to Receiving Hospital, while handcuffed." (*Id.* at Pg. ID 179.) Because both claims arise within the context of a police seizure, Defendants argue that they are more "properly analyzed under the Fourth Amendment" and that Plaintiff's "due process claims in Counts 4 and [6][1] should be dismissed with prejudice." (Dkt. # 19, Pg. ID 221-22.) The court agrees.

---

[1] In their original Motion, Defendants mislabeled Plaintiff's third Fourteenth Amendment claim as Count 5 rather than Count 6. (Dkt. # 19, Pg. ID 221.) Contextually it is clear Defendants were referring to Count 6, and the court will analyze it as such.

"If a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier,* 520 U.S. 259, 272 n.7 (1997). Accordingly, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than a 'substantive due process' approach" under the Fourteenth Amendment. *Graham v. Connor,* 490 U.S. 386, 395 (1989). The court addresses Plaintiff's factual allegations in the context of the Fourth Amendment.

### 2. Unreasonable Seizure and Force

Plaintiff, in his complaint, claims that Defendants Muczynski and Collins violated his Fourth Amendment right "to be secure in his person and home [sic] excessive force" when they "savagely beat[] him, in the face and head, while he was, lying face down on his bed and handcuffed"; "yanked [him] up from the bed by his handcuffed hands and arms, as if he were a piece of paper"; and "dragged/pushed/forced [him] down the stairs." (Dkt. # 17, Pg. ID 179 (internal quotations omitted).) Defendants argue that they are entitled to summary judgment on this claim because the undisputed facts show that (1) Plaintiff's face and head were not "savagely beaten" and (2) Defendants acted reasonably given the circumstances. Both arguments will be addressed in turn.

### i. Plaintiff was not "savagely beaten"

Plaintiff alleges that on the April 3, 2013, he was intoxicated and accidentally cut himself after cutting his hand on a broken glass table top during a dispute with his girlfriend, Linda King. (Dkt. # 23-1, Pg. ID 475.) He claims he then went upstairs to

9

sleep it off, only to be awakened some time later by Defendants "beating [him] in [his] face and in [his] head." (*Id.*) Allegedly, Defendants had already placed him "in handcuffs before they started hitting [him]." (*Id.* at Pg ID 475-76.) Plaintiff testified about what he characterized in the complaint as a "savage beating":

> Q. How many times did he hit you?
>
> A. He was bang. I'm not sure. But he was like hitting me.
>
> Q. Punching you?
>
> A. Yes.
>
> Q. More than one time?
>
> A. More than three times.
>
> Q. More than three times. More than five times?
>
> A. Yes.
> Q. More than 10 times?
>
> A. I ain't sure because at that time I'm really just taking it. I'm in handcuffs. And I know if I would have hit him back I would probably been in jail.
>
> Q. So you think he punched you between 5 and 10 times?
>
> A. Yes.

(*Id.* at Pg. ID 476.)

Plaintiff said that the officers then forced him down the stairs and transported him in a police car to the hospital. (*Id.* at Pg. ID 476.)

It is no surprise that Defendants present a different account of what transpired on the night in question. Both officers claim that when they arrived at Plaintiff's address, his girlfriend told them that he was suicidal. (Dkt. # 19-9, Pg. ID 378; Dkt. # 19-10, Pg. ID 405.) They claim they found the Plaintiff in his bedroom—awake and "belligerent"—with cuts on his hands, bleeding. (Dkt. # 19-9, Pg. ID 379; Dkt. # 19-10,

10

Pg. ID 408.) When they asked him if he was suicidal, he said "fuck you" and refused to answer the question. (*Id.*). In his deposition, Defendant Collins claims that "[d]ue to the injury on [Plaintiff] and his mental state, we decided that it would best that he'd go down to the crisis center . . . . So we handcuffed him, walked him down the stairs." (Dkt. # 19-9, Pg. ID 379.) Plaintiff refused to cooperate with Defendants, "flinging his body around" and "making allegations that force was used on him." (*Id.*; *see also* Dkt. # 19-10, Pg. ID 418.) He was then treated by paramedics and transported by other officers to the hospital. (*Id.* at Pg. ID 379-80.) Both officers deny ever striking Plaintiff. (Dkt. # 19-9, Pg. ID 392; Dkt. # 19-10, Pg. ID 424.)

Ordinarily, contradictory testimonies such as these point to a factual question to be submitted to the jury, but the Supreme Court has held that when "opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (finding videotape contradicted and discredited non-movant's affidavit); *White v. Georgia,* 380 F. App'x 796, 798 (11th Cir. 2010) (refusing to credit the plaintiff's testimony that she was shot where the medical records conclusively established that her injuries were not caused by a gunshot). Here, Plaintiff's dramatic complaint and direct testimony are both discredited by the medical record. The attending physician treating Plaintiff noted that his head, ears, eyes, nose, and throat all looked normal: "HEENT:[2] Scalp soft tissues are normal. *There is no evidence of any significant soft*

---

[2] "HEENT" is medical shorthand for "head, eyes, ears, nose, and throat."

*tissue swelling, bruising, abrasions or lacerations of the scalp.* Eyes, pupils are round and reactive to light. . . . There is *no facial soft tissue swelling.*" (Dkt. # 19-13, Pg. ID 440 (emphasis added).)

It is not conceivable that in the wake of an alleged "savage beating" in which a victim is repeatedly punched in the face and head as many as ten times, there would exist absolutely no medical evidence of a discernable injury of *any* kind, and that the available medical observations would in fact conclude that there existed no swelling, no bruising, no abrasions, and no lacerations of any sort, leading to a conclusion of "normal" tissue in every respect.

The court concludes that, within the facts of this case, the unchallenged, objective, and independent medical evidence "blatantly contradicts" Plaintiff's testimony, and that in the face of such contradiction, no reasonable jury could conclude that Plaintiff was "beaten" about his "face and head" —whether "savagely" or in any other way— as he has alleged. The court will grant this aspect of Defendants' Motion.

### ii. Reasonableness

To the extent that Plaintiff's Fourth Amendment claim challenges Defendants' handcuffing and subsequent detention independent of the alleged beating, it also fails. The Supreme Court has held that "what the Constitution forbids is not all . . . seizures, but only unreasonable" ones. *Elkins v. United States,* 364 U.S. 206, 22 (1960). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal

citations omitted). When, as here, "an official seiz[es] and detain[s] a person for psychiatric evaluation," the Fourth Amendment requires that official "to have probable cause to believe that the person is dangerous to himself or others." *Hoover v. Walsh,* 682 F.3d 481, 499 (6th Cir. 2012) (quoting *Monday v. Oullette,* 118 F.3d 1099, 1102 (6th Cir. 1997)). Analogizing dangerous mental conditions to "the role of criminal activity in traditional Fourth Amendment analysis," the Sixth Circuit has found that such probable cause is established whenever there is "a probability or substantial chance of dangerous behavior," and does not require "an actual showing of such behavior." *Monday,* 118 F.3d at 1102 (citing *Illinois v. Gates,* 462 U.S. 213, 245 n.13 (1983)).

Here, it is not contestable that Defendant officers had "probable cause to believe that [Plaintiff was] dangerous to himself." *Hoover,* 682 F.3d at 499. It is undisputed that King called 911, reported that Plaintiff was suicidal, and later informed the dispatcher that Plaintiff had cut his arm with a broken bottle and was bleeding heavily. (Dkt. # 23-3, Pg. ID 493; *see also* Dkt. # 23-1, Pg. ID 475.) When Defendants arrived at the scene, they found King "covered in blood, standing by the curb." (Dkt. # 19-10, Pg. ID 405; *see also* Dkt. # 19-9, Pg. ID 378.) She was "[s]omewhat frantic, concerned for the safety of [Plaintiff]," affirming again that he was trying to kill himself. (Dkt. # 19-9, Pg, ID 392.) When Defendants found Plaintiff in his bedroom, they "observed the cuts" on his hands and wrists, and "saw blood." (Dkt. # 19-10, Pg. ID 408-09.) Defendant Collins indicated Plaintiff was actively bleeding. (Dkt. # 19-9, Pg. ID 379.)

Taken collectively, this unchallenged evidence easily establishes that there was a "substantial chance" that Plaintiff was in the midst of a suicide attempt. In light of this, Defendants conduct in handcuffing him, escorting him down the stairs, and transporting

13

him against his will to the hospital were reasonable.

### C. State Law Claims

Counts 3 and 7 of Plaintiff's Amended Complaint alleges assault and battery under Michigan law. (Dkt. # 17, Pg. ID 177, 180.) The court however, declines to exercise its supplemental jurisdiction over these claims. A district court has the power to dismiss or remand claims *sua sponte* for lack of subject matter jurisdiction. *See, e.g., Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998). Claims with original jurisdiction in a district court have either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332. In some circumstances, additional claims alleging violations of only state law may be heard under the supplemental jurisdiction granted pursuant to 28 U.S.C. § 1367.

Once the court has exercised supplemental jurisdiction, it need not dismiss the state law claim merely because the federal claim failed. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952-53 (6th Cir. 2010). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel*, 625 F.3d at 952 (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)) (internal quotation marks omitted); *see* 28 U.S.C. § 1367(c)(3). The court must weigh the factors set forth in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), to determine whether to retain jurisdiction. *Gamel*, 625 F.3d at 951-52. Those factors are judicial economy, convenience, fairness, and comity. *Carnegie-Mellon*, 484 U.S. at 350; *Gamel*, 625 F.3d at 951-52.

True, § 1367(c)(3) and *Gamel* address what becomes of state law claims where all federal claims have been dismissed, while here the court has resolved to grant summary judgment on the federal claims. However, where, as here, the court has granted summary judgment on a pure question of law, the grant of summary judgment is indistinguishable from dismissal on the legal merits of the claim for the purposes of the supplemental jurisdiction analysis, with the exception that the extra effort expended on the matter by the time summary judgment is reached may tip the scales in favor of retaining jurisdiction in some cases. *See Carnegie-Mellon*, 484 U.S. at 350 ("[A] federal court should consider and weigh in each case, *and at every stage of the litigation*, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction . . . ." (emphasis added)).

But the scales are not so tipped here. Judicial expenditures have been minimized—the parties have prudently avoided excess motion practice, and none of the court's previous orders expressly addressed Plaintiff's state law claims. All three of the other factors—convenience, fairness, and comity—also weigh in favor of dismissal. Assault and battery claims invoke quintessentially state-law questions. It would therefore be more fair to the parties to have a state court resolve the matter, and comity obviously demands the same. There may be some inconvenience occasioned on the parties by having to pursue any claim or respond to any defense in yet another action, but that inconvenience is outweighed by the convenience afforded by litigating tort actions in a state court more familiar with Michigan law. The state law claims must be dismissed.

### IV. CONCLUSION

15

IT IS ORDERED that Defendants' Motion for Summary Judgment (Dkt. # 19) is GRANTED IN PART.  The Motion is GRANTED with respect to all of Plaintiff's federal claims.

IT IS FURTHER ORDERED that Plaintiff's state law Assault and Battery claims are DISMISSED WITHOUT PREJUDICE.

                                         s/Robert H. Cleland  
                                         ROBERT H. CLELAND  
                                         UNITED STATES DISTRICT JUDGE

Dated:  August 11, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 11, 2016, by electronic and/or ordinary mail.

                                         s/Lisa Wagner  
                                         Case Manager and Deputy Clerk  
                                         (313) 234-5522